IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| INTEGRAL SCRAP & RECYCLING, INC., | ) | |
| | ) | |
| | ) | 2:20-CV-00871-MJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CONIFER HOLDINGS, INC., WHITE PINE INSURANCE COMPANY, | ) ) | |
| Defendants, | | |

OPINION AND ORDER

Plaintiff, Integral Scrap & Recycling, Inc., brings claims for Breach of Contract and Bad Faith Pursuant to 42 Pa.C.S. § 8371 against Defendants, Conifer Holdings, Inc. and White Pine Insurance Company, alleging failure to honor contractual obligations under a commercial insurance policy. (ECF No. 25). Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF Nos. 26-27). The matter is now ripe for consideration.

Upon consideration of Integral Scrap's Amended Complaint (ECF No. 25), Defendants' Motion to Dismiss (ECF No. 26), the respective briefs of the parties (ECF Nos. 27-29), and for the following reasons, Defendants' Motion to Dismiss will be granted. Integral Scrap will be granted leave to amend.

I.   Background

Integral Scrap is a scrap and a recycling management firm that maintained an insurance policy (Policy) issued with the Defendants. (ECF No. 25 at ¶¶ 6-7). On September 30, 2019, a fire damaged Integral's 2002 Labounty Shear (shear). *Id*. at ¶¶ 8,9. The Policy covered the shear up to $100,000. *Id*. at ¶ 10. Under the Policy, insured property is valued as follows:

> The Company shall not be liable beyond the **actual cash value of the property** at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

*Id*. at ¶ 13, ECF No. 25-1 at p. 3, ¶ 8 (emphasis added).  To assess the loss of the shear, Defendants retained CCC Information Services, Inc. (CCC).  *Id*. at ¶ 12.  CCC concluded the actual cash value of the shear was $40,918.  *Id*. at ¶ 14.  On December 12, 2019, after deducting for salvage and Integral Scrap's deductible, and then adding sales tax, Defendants offered an actual cash value of $39,663.08 for the shear.  *Id*. at ¶ 15.  Integral Scrap avers that Defendants' cash offer was unreasonably low.  *Id*. at ¶ 16.

On December 27, 2019, Defendants requested from Integral Scrap an examination under oath as well as the production of certain documents.  *Id*. at ¶¶ 17-18.  Integral Scrap avers that many of the documents requested, such as those relative to bankruptcy filings, mutual funds, annuities, life insurance policies and tax returns, would be "useless" to Defendants' investigation.  *Id*. at ¶¶ 19, 25, 27-28.  In response to the document request, Integral Scrap avers it served upon Defendants "documents that would useful" in the claim investigation.  *Id*. at ¶ 29.  Because Integral Scrap did not produce the documents as requested, Defendants cancelled a scheduled examination under oath.  *Id*. at ¶¶ 31-32.  By letter, Defendants subsequently revoked their $39,663.08 offer to settle the claim and stated that it would "consider its coverage positions after completion of [an] Examination under Oath and…full compliance with White Pine's document requests."  *Id*. at ¶¶ 36-37.

Several provisions in the Policy outline the insured's obligations upon a loss of its insured property:

> [a]ll adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at

the office of the Company. No loss shall be paid or made good if the Insured has collected the same from others.

(ECF No. 25-1 at p. 3, ¶ 9).

The Policy also states under its "Common Policy Conditions":

C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

*Id*. at p. 7, ¶ C. Further, the Contractor's Equipment Floater states:

9. REQUIREMENTS IN CASE LOSS OCCURS The insured shall give immediate written notice to this company of any loss, protect the property from further damage, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed, and within sixty days after the loss, unless such time is extended in writing by this company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, and the insured shall permit the company to inspect and appraise the damaged property before it's repair or disposal.

*Id*. at p. 14, ¶ 9.

In its Motion to Dismiss, Defendants argue that Integral Scrap's Amended Complaint fails to state a claim for breach of contract and statutory bad faith and fails to set forth facts which would warrant punitive damages.

II.    Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a

motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d

Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.' " *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

III.   Discussion

   A.   Breach of Contract

Defendants argue that Integral Scrap's breach of contract claim fails because the Amended Complaint fails to specifically allege the essential terms and provisions of the Policy, which is a requisite to a breach of contract claim. Further, Defendants contend that the Amended Complaint fails to allege an instance in which they breached any provision of the Policy or how they breached the Policy. Integral Scrap maintains that Defendants breached the Policy by failing to pay the covered loss, specifically the reasonable actual cash value under the Policy and that the Amended Complaint specifically pleads the alleged Policy provisions that Defendants breached. Further, Integral Scrap contends that Defendants breached the Policy's covenant to act in good faith because they offered an unreasonably low actual cash value payment, withdrew the actual cash value offer without a reasonable basis, obtained and endorsed an estimate which does not adequately restore the insured to its position prior to loss, requested the production of

documents that the insured had no duty to produce, and then halted the investigation when the documents were not received. (ECF No. 25 at ¶ 52). Defendants respond that the Policy specifically imposes obligations on the insured, and that Integral Scrap cooperated only to the extent it deemed necessary and refused to produce documents it did not believe were relevant to the Defendants' investigation.

To state a breach of contract claim in Pennsylvania, a plaintiff must plead three elements: "(1) the existence of a contract, including its essential terms; (2) a breach of that contract; and (3) resultant damages." *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (internal citation and quotations omitted); *see also Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 587–88 (W.D. Pa. 2017) (applying Pennsylvania breach of contract law to claim in federal court). "When a plaintiff pleads a contract according to its legal effect, the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond." *Clapps v. State Farm Ins. Companies*, 447 F. Supp. 3d 293, 297 (E.D. Pa. 2020) (citations omitted).

Here, Integral Scrap does not plead sufficient facts to support its breach of contract claim. Specifically, Integral Scrap has not adequately pleaded the damage element of its claim. Instead, the Amended Complaint alleges, in conclusory fashion, that Defendants made an unreasonably low actual cash value offer of $39,663.08. However, Integral Scrap's Amended Complaint does not sufficiently specify a resultant damage from any alleged breach. *See e.g. Giacobbe v. QBE Specialty Ins. Co.*, 2018 WL 2113266, at *5 (D.N.J. May 8, 2018) (holding amount of actual cash value an essential element to breach of contract claim). Moreover, the policy requires, as a condition of reporting a loss that "the insured… give immediate written notice to this company

of any loss…showing in detail **actual cash value and amount of loss claimed**." (ECF No. 25-1 at p. 14, ¶ 9). Integral Scrap's Amended Complaint does not detail an actual cash value and amount of loss claimed. Therefore, without sufficient pleading as to the damage's element, Integral Scrap has not adequately pleaded a breach of contract claim.

Accordingly, Defendants' Motion to Dismiss Count I of the Amended Complaint will be granted. Integral Scrap will be granted leave to amend.

B. Bad Faith

Defendants argue that Integral Scrap's statutory bad faith claims should be dismissed because Integral Scrap has not alleged sufficient facts in support. Specifically, Defendants contend that the Amended Complaint includes only bald and conclusory averments in support of the bad faith claim. Integral Scrap argues that bad faith is adequately pleaded. Defendants respond that Integral Scrap does not assert any facts disputing that the actual cash value was the proper measure of damage, challenging the reasonableness of Defendants' reliance upon CCC's estimate, or providing a contrary assertion as to a proper valuation.

42 Pa.C.S. § 8371 provides a cause of action for bad faith under an insurance policy. The statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. Under Pennsylvania law, to recover for bad faith, a plaintiff must prove, by clear and convincing evidence, that: (1) an insurer lacked a reasonable basis for denying a claim;

and, (2) knew or recklessly disregarded its lack of reasonable basis in denying it. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997); *Polselli v. Nationwide Mut. FireIns. Co.*, 23 F.3d 747, 750 (3d Cir. 1994); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994). "[A]verments [which] are merely conclusory legal statements and not factual averments" cannot support a bad faith claim. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 599 (E.D. Pa. 2010).

Here, Integral Scrap has pleaded that Defendants had an unreasonable basis to deny its claim. Integral Scrap further alleges that Defendants engaged in bad faith in their investigation of the claim by propounding unnecessary, burdensome, and overbroad document requests related to mutual funds, life insurance policies, five years of tax returns, and bankruptcy documents, which allegedly served no legitimate purpose in Defendants' investigation of this commercial insurance claim. While Integral Scrap argues these averments are sufficient to state a claim, they do not account for the requirements under the Policy and contain conclusory allegations.

As outlined in the policy, actual cash value of the property is to be "ascertained…with proper deduction for depreciation." (ECF No. 25-1 at p. 3, ¶ 8). In conjunction with this policy language, the insured, at the time of loss, is required to "render to [Defendants]…the interest of the insured and of all others in the property, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property." *Id*. at p. 14, ¶ 9. Moreover, the policy provides, "[Defendants] may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward." *Id*. at p. 7, ¶ C.

Integral's assertions that Defendants' requests were "unnecessary," "burdensome," and "overbroad" are conclusory given that the allegations do not specify how the documents requested would not support the requirements of proof under the Defendants' Policy. The

8

Policy sets forth that depreciation, encumbrances, and a books and records audit are subject to investigation as a prerequisite of a loss payment. When Integral rejected Defendants' actual cash value offer, it placed the shear's valuation at issue and invited further investigation under the Policy, which could include some of the documentation requested by the Defendant. Defendants are placed in a position where they have a duty to conduct a thorough investigation; however, they are hamstrung by their insured's unilateral determinations of what Defendant's should be allowed to investigate. Should this dispute continue, claims and defenses will center on the actual cash value of the shear. Defendants will likely make similar, if not identical, requests that it made in its pre-litigation document requests and the same would be subject to Integral's objections. But as recently observed, "'[t]he party opposing discovery has the burden of proving that the requested discovery should be disallowed.'" *Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, No. CV 19-4016, 2021 WL 229400, at *6 (E.D. Pa. Jan. 22, 2021) (citations omitted). However, "'[t]he mere statement that a discovery request is 'overly broad, burdensome oppressive and irrelevant' is not adequate to voice a successful objection.'" *Id*. Likewise here, Integral Scrap's allegations of bad faith, relative to objections to document requests, are conclusory and do not meet the burden to sufficiently plead that they are overly broad, unduly burdensome, or not reasonably calculated to the discovery of admissible evidence. Moreover, Integral Scrap does not allege that Defendants knew or should have known that the requested documents would not lead to relevant material. Therefore, without more specificity, those allegations cannot support a bad faith claim. Finally, as discussed above, Integral Scrap's claims that the Defendants' determination of actual cash value was unreasonable are similarly conclusory, and Integral Scrap has provided neither a specific claim for damage nor an

9

alternative valuation method. Thus, Integral Scrap has not adequately pleaded a statutory bad faith claim.

Accordingly, Defendants' Motion to Dismiss Count II of the Amended Complaint will be granted. Integral will be granted leave to amend.

### C. Punitive Damages

Integral Scrap's alleged claim for punitive damages in Count II of its Amended Complaint. Defendants seek dismissal of any claim for punitive damages. Count II has been dismissed on other grounds. As such, claims for punitive damages for said dismissed count are moot.

Accordingly, Defendants' Motion to Dismiss Integral Scrap's claim for punitive damages under Count II, is denied as moot.

### ORDER

And now this 4th day of March 2021, following consideration of Integral Scrap's Amended Complaint (ECF No. 25), Defendants' Motion to Dismiss (ECF No. 26), the respective briefs of the parties (ECF Nos. 27-29), and for the foregoing reasons, Defendants' Motion to Dismiss is granted. Integral Scrap's Amended Complaint is dismissed. Integral may file a Second Amended Complaint on or before March 18, 2021, and Defendants shall file their answer on or before April 1, 2021.

BY THE COURT:

_____
Marilyn J. Horan
United States District Judge