IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

INTEGRAL SCRAP & RECYCLING, INC.,   )
   )
   )       2:20-CV-00871-MJH
       Plaintiff,   )
   )
     vs.   )
   )
CONIFER HOLDINGS, INC., WHITE PINE   )
INSURANCE COMPANY,   )

       Defendants,

OPINION

Plaintiff, Integral Scrap & Recycling, Inc., brings claims for Breach of Contract and Bad Faith Pursuant to 42 Pa.C.S. § 8371 against Defendants, Conifer Holdings, Inc. and White Pine Insurance Company, alleging failure to honor contractual obligations under a commercial insurance policy. (ECF No. 31). Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF Nos. 32-33). The matter is now ripe for consideration.

Upon consideration of Integral Scrap's Amended Complaint (ECF No. 31), Defendants' Motion to Dismiss (ECF No. 32), the respective briefs of the parties (ECF Nos. 33-34), and for the following reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.

I.     Background

Integral Scrap is a scrap and a recycling management firm that maintained an insurance policy (Policy) issued with the Defendants. (ECF No. 31 at ¶¶ 6-7). On September 30, 2019, a fire damaged Integral Scrap's 2002 Labounty Shear (shear). *Id*. at ¶¶ 8-9. The Policy covered the shear up to $100,000. *Id*. at ¶ 10. Under the Policy, insured property is valued as follows:

The Company shall not be liable beyond the **actual cash value of the property** at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for

depreciation, however caused, and shall in no event exceed what it would then cost
to repair or replace the same with material of like kind and quality.

*Id*. at ¶ 13, ECF No. 31-1 at p. 3, ¶ 8 (emphasis added).   To assess the loss of the shear,

Defendants retained CCC Information Services, Inc. (CCC).   *Id*. at ¶ 12.   CCC concluded the

actual cash value (ACV) of the shear was $40,918.   *Id*. at ¶ 14.   On December 12, 2019, after

deducting for salvage and Integral Scrap's deductible, and then adding sales tax, Defendants

offered an ACV of $39,663.08 for the shear.   *Id*. at ¶ 15.   Integral Scrap avers that Defendants'

cash offer was unreasonably low.   *Id*. at ¶ 16.   It alleges that Defendants computed ACV based

upon shears that were not of like kind and quality compared to the damaged shear.   *Id*. at ¶ 18.

Further, Defendants allegedly improperly relied on upon a $4,332 deduction for depreciation.   *Id*.

at ¶ 19.   On December 17, 2019, Integral provided documentation to Defendants demonstrating

that the ACV of a shear of like kind and quality was $103,000.   *Id*. at ¶ 20.

On December 27, 2019, Defendants requested from Integral Scrap an examination under

oath as well as the production of certain documents.   *Id*. at ¶¶ 23-24   Integral Scrap avers that

many of the documents requested, such as those relative to bankruptcy filings, mutual funds,

annuities, life insurance policies and tax returns, would be "useless" to Defendants'

investigation.   *Id*. at ¶¶ 25-38.   In response to the document request, Integral Scrap avers it

served upon Defendants "documents that would useful" in the claim investigation.   *Id*. at ¶ 39.

Because Integral Scrap did not produce the documents as requested, Defendants cancelled a

scheduled examination under oath.   *Id*. at ¶¶ 41-42.   By letter, Defendants subsequently revoked

their $39,663.08 offer to settle the claim and stated that it would "consider its coverage positions

after completion of [an] Examination under Oath and…full compliance with White Pine's

document requests."   *Id*. at ¶¶ 46-47.

Several provisions in the Policy outline the insured's obligations upon a loss of its

insured property:

> [a]ll adjusted claims shall be paid or made good to the Insured within sixty (60)
> days after presentation and acceptance of satisfactory proof of interest and loss at
> the office of the Company. No loss shall be paid or made good if the Insured has
> collected the same from others.

(ECF No. 33-1 at p. 3, ¶ 9).  Further, with regard to examinations under oath, the Policy states in

relevant part,

> 7. Examination Under Oath. The Insured, as often as may be reasonably required,
> shall exhibit to any person designated by the Company all that remains of any
> property herein described, and shall submit, and in so far as is within his or their
> power cause his or their employees, members of the household and others to
> submit to examinations under oath by any person named by the Company and
> subscribe the same; and, as often as may be reasonably required, **shall produce
> for examination all writings, books of account, bills, invoices and other
> vouchers, or certified copies thereof if originals be lost, at such reasonable
> time and place as may be designated by the Company or its representative,
> and shall permit extracts and copies thereof to be made.** No such examination
> under oath or examination of books or documents, nor any other act of the
> Company or any of its employees or representatives in connection with the
> investigation of any loss or claim hereunder, shall be deemed a waiver of any
> defense which the Company might otherwise have the respect to any loss or
> claim, but all such examinations and acts shall be deemed to have been made or
> done without prejudice the Company's liability.

*Id*. at p. 3, ¶ 7 (emphasis added).

The Policy also states under its "Common Policy Conditions":

C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at
any time during the policy period and up to three years afterward.

*Id*. at p. 7, ¶ C. Further, the Contractor's Equipment Floater states:

> 9. REQUIREMENTS IN CASE LOSS OCCURS The insured shall give
> immediate written notice to this company of any loss, protect the property from
> further damage, furnish a complete inventory of the destroyed, damaged and
> undamaged property, showing in detail quantities, costs, actual cash value and
> amount of loss claimed, and within sixty days after the loss, unless such time is

extended in writing by this company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, and the insured shall permit the company to inspect and appraise the damaged property before it's repair or disposal.

*Id*. at p. 14, ¶ 9.

In its Motion to Dismiss, Defendants argue that Integral Scrap's Second Amended Complaint fails to state a claim for breach of contract and statutory bad faith and fails to set forth facts which would warrant punitive damages.

II.     Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A

pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be

granted.' " *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015)

(quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

III.    Discussion

    **A.  Breach of Contract**

Defendants argue that Integral Scrap's breach of contract claim fails because the Second

Amended Complaint does not specifically allege the essential terms and provisions of the Policy,

which is a requisite to a breach of contract claim.  Further, Defendants contend that the Second

Amended Complaint fails to allege an instance in which they breached any provision of the

Policy or how they breached the Policy.   In particular, Defendants maintain that Integral Scrap

mischaracterizes what is considered "actual cash value" under the Policy, stating that it

constitutes replacement cost when the Policy states that "actual cash value" is "the amount it

would cost to repair or replace Covered Property, at the time of loss or damage," which the

Policy notes "may be significantly less than its replacement cost." Further, they counter Integral

Scrap's contention that depreciation is not a proper deduction under the terms of the Policy.

Finally, Defendants contend that Integral Scrap's valuation of the shear is based on a

replacement cost alone, without considering the cost of repair or deductions taken for

depreciation.

Integral Scrap maintains that it has now adequately pleaded damages for Defendants'

breach of the policy.  Namely, it alleged that a comparable 2002 shear to replace the lost shear

would total $103,000.  (ECF No. 31 at ¶ 20).  Accordingly, under the policy, Integral Scrap

contends that Defendants' offer of $39,663.08 breached the Policy by failing to pay the value of

a shear of like kind and quality for the covered loss.

To state a breach of contract claim in Pennsylvania, a plaintiff must plead three elements: "(1) the existence of a contract, including its essential terms; (2) a breach of that contract; and (3) resultant damages." *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (internal citation and quotations omitted); *see also Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 587–88 (W.D. Pa. 2017) (applying Pennsylvania breach of contract law to claim in federal court). "When a plaintiff pleads a contract according to its legal effect, the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond." *Clapps v. State Farm Ins. Companies*, 447 F. Supp. 3d 293, 297 (E.D. Pa. 2020) (citations omitted).

Here, in its March 4, 2021 Opinion and Order, this Court dismissed Integral Scrap's breach of contract claim on the basis that it had failed to aver an actual cash value and amount of loss claimed. (ECF No. 30 at p. 6-7). Therefore, without those averments, Integral Scrap had failed to sufficiently plead the damages element of a breach of contract claim. The Court subsequently granted Integral Scrap leave to amend with an opportunity to cure those deficiencies. Presently, the Second Amended Complaint avers sufficient allegations relative to Integral Scrap's valuation of its lost shear and the damages element of the breach of contract claim. Therefore, at this stage of the proceedings, Integral Scrap has sufficiently pleaded a plausible breach of contract claim.

Accordingly, Defendants' Motion to Dismiss Count I of the Second Amended Complaint will be denied.

### B. Bad Faith

Defendants argue that Integral Scrap's statutory bad faith claims should be dismissed because Integral Scrap has not alleged sufficient facts for said claims.  Specifically, Defendants contend that the Second Amended Complaint includes only bald and conclusory averments in support of the bad faith claim. Integral Scrap argues that bad faith is adequately pleaded. Further, it maintains that, after this Court dismissed bad faith count in the Amended Complaint, the following allegations were added:

> (c) Failing to pay the actual cash value of the Shear;
>
> (d) Rejecting Integral's comparables showing the actual cash value of the Shear;
>
> ***
>
> (g) Requesting the production of documents that have nothing to do with the actual cash value of the Shear; and
>
> (h) Requesting the production of documents that are irrelevant to the claim.

(ECF No. 31 at ¶ 62).

42 Pa.C.S. § 8371 provides a cause of action for bad faith under an insurance policy. The statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
>> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>> (2) Award punitive damages against the insurer.
>> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.  Under Pennsylvania law, to recover for bad faith, a plaintiff must prove, by clear and convincing evidence, that: (1) an insurer lacked a reasonable basis for denying a claim; and, (2) knew or recklessly disregarded its lack of reasonable basis in denying it. *Klinger v. State*

*Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997); *Polselli v. Nationwide Mut. FireIns. Co.*, 23 F.3d 747, 750 (3d Cir. 1994); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994). Notably, "bad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages." *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa.Super.Ct.2009). "[A]verments [which] are merely conclusory legal statements and not factual averments" cannot support a bad faith claim. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 599 (E.D. Pa. 2010).

Here, the Court had previously opined that Integral Scrap's Amended Complaint had failed to sufficiently plead a statutory bad faith action but granted leave to amend. (ECF No. 30). The issue now is whether the additional averments, as outlined above, in the Second Amended Complaint cure those deficiencies. Upon careful review of the Second Amended Complaint, the Court finds that Integral Scrap still fails to state a statutory bad faith claim and incorporates its reasoning from its March 4, 2021 Opinion and Order. (ECF No. 30). The Court though will reiterate, that the Second Amended Complaint's allegations regarding Defendants' pre-litigation investigation and document requests further buttress the Court's prior decision. Defendants undertook an investigation upon the initial loss of the shear and made an offer. Integral Scrap rejected that offer and made its own claim of value for payment. (ECF No. 31 at ¶ 20). In response, Defendants continued the investigation by seeking documents and an examination under oath, as permitted by the Policy. Such conduct is not bad faith. Expecting an insurer to both investigate claims placed at issue by the insured and to do so only in a manner that is acceptable to the insured, is untenable. Therefore, as before, Integral Scrap's allegations of bad faith, relative to objections to document requests, do not meet the burden to sufficiently plead bad faith. Finally, as to the remaining allegations, they speak to a general disagreement over

Defendants' estimate of Integral Scrap's damages. The Second Amended Complaint continues to support that an offer was made and that further effort at investigation was attempted by Defendants.  These allegations of valuation and investigation disagreements do not support that Defendants engaged in bad faith.  Thus, Integral Scrap has not adequately pleaded a statutory bad faith claim.

Accordingly, Defendants' Motion to Dismiss Count II of the Second Amended Complaint will be granted.  Because Integral Scrap's Second Amended Complaint did not cure the deficiencies identified by the Court in its March 4, 2021 Opinion and Order, any further amendment to Count II is deemed futile, and therefore, Count II will be dismissed.

### C.  Punitive Damages

Integral Scrap's alleged claim for punitive damages in Count II of its Second Amended Complaint.  Defendants seek dismissal of any claim for punitive damages.  Count II has been dismissed on other grounds.  As such, claims for punitive damages for said dismissed count are moot.

Accordingly, Defendants' Motion to Dismiss Integral Scrap's claim for punitive damages under Count II, is denied as moot.

### IV.    Conclusion

Following consideration of the foregoing, Defendants' Motion to Dismiss will be granted in part and denied in part.  The Motion will be denied as to Count I and will be granted as to Count II. Count II will be dismissed with prejudice.   A separate order will follow.

BY THE COURT:

Marilyn J. Horan
United States District Judge